UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD G. LITZAN,

                Plaintiff,

                                        Case No. 12-cv-12291

vs.                                       HON. GERSHWIN A. DRAIN


SERVICE 1ST MAINTENANCE, LLC,
a Michigan limited liability company, and
UNITED AMERICAN PAYROLL, LLC, a
Michigan limited liability company, jointly
and severally,

                Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT UAP'S MOTION FOR SUMMARY JUDGMENT [#51] AND DEFENDANT SERVICE 1ST'S MOTION FOR SUMMARY JUDGMENT [#52]

**I.**     **INTRODUCTION**

        Plaintiff, Ronald Litzan, filed the instant action against his former employers, Service 1st and

UAP, claiming that Defendants violated the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. § 12101 *et seq.*, Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"), MICH.

COMP. LAWS § 37.1101 *et seq.*, and Michigan's Workers' Disability Compensation Act ("WDCA"),

MICH. COMP. LAWS § 418.301(13), by terminating him on March 30, 2011 for allegedly violating

company policy.

        Presently before the Court is UAP's Motion for Summary Judgment, filed on June 17, 2013

and Service 1st's Motion for Summary Judgment, also filed on June 17, 2013.  UAP claims that

dismissal is required because it never employed Plaintiff nor did it have an ownership interest in

UAP 19, the entity that did employ Plaintiff.  Service 1st argues that it did not violate the ADA or the PDCRA when it terminated Plaintiff because the motivating factor was Plaintiff's poor performance rather than his disability.  Service 1st also claims that Plaintiff's retaliation claim under the WDCA must be dismissed because he did not qualify for benefits and there was no causal connection between termination and filing a claim.  This matter is fully briefed and a hearing was held on July 29, 2013.  For the reasons that follow, the Court DENIES UAP's and Service 1st's Motions for Summary Judgment.

## II.     FACTUAL BACKGROUND

Plaintiff suffers from two disabilities, club feet and hammer toes.  He has had several operations for these conditions and has pins in his feet as a result.  Mark Weatherly, the owner of Service 1st, was informed of this disability when he hired Plaintiff on December 31, 2007.  Plaintiff started working for Service 1st around January 2008 as a janitor.  He was assigned to work at the Roeper School where his duties included general cleaning of the school, locker rooms, bathrooms, gym, and office areas.  Plaintiff's supervisor was Jerome Schornak and his crew leader was Tony Berger.  In 2010, Plaintiff became the crew leader when Mr. Berger left for another position at Service 1st.  In his new position, Plaintiff was responsible for his cleaning duties, but was also responsible for making sure the crew members under him completed their work satisfactorily.

Around this time UAP started providing payroll and human resource support for Service 1st.  UAP took several steps that made it appear as if it was also Plaintiff's employer.  First, UAP required Plaintiff to sign an "Application for Employment" in January 2010.  Second, UAP and Service 1st jointly provided an employee handbook where they referred to themselves as "The Company."  The handbook set forth the terms and conditions of Plaintiff's employment.  It also

made clear that both companies had the power to control the work of and to terminate employees of Service 1st. This was further evidenced by the fact that the names of both companies were on warning notices and termination notices. UAP implemented a progressive disciplinary program where an employee was given strikes for misconduct and terminated once they received three strikes.

Despite stating that he was unable to clean stairwells, Plaintiff cleaned one out of the four of the school's stairwells in the summer of 2009 and 2010. Plaintiff stated that he could clean stairwells in the summer because he could "take [his] time doing it without pushing [him]self." After his promotion to crew leader, Plaintiff fixed parts of the stairs that were not cleaned properly by the crew members about five times.

On October 21, 2010, Plaintiff injured his knee while cleaning the science wing of the school. He got tangled up with a chair and his knee hit the edge of the chair as he was falling. Plaintiff's knee became very swollen and was advised by Mr. Schornak to seek medical care. Plaintiff filed a worker's compensation claim, but did not receive benefits because he was only off work for two days. Plaintiff claims that Service 1st called to request he return to work, but that he returned to the doctor and received verification that he needed additional time off.

At the end of the Summer of 2010, Mr. Schornak asked Plaintiff if he could clean the stairwells regularly. Plaintiff responded that he could not because of his disability. In response, Mr. Schornak requested that Plaintiff provide a note from his doctor saying that he could not clean the stairwells. Plaintiff claims that he provided x-rays showing the screws in his feet as well a Michigan Department of Rehabilitation Physical Assessment Form, but this was not sufficient. Plaintiff provided a doctor's note on February 8, 2011. The date on the document had been altered to show February 8, 2011, but elsewhere on the document it said the last time Plaintiff was seen was on

-3-

October 4, 2007.  Mr. Weatherly contacted the doctor about the note and was told it was not signed on February 8, 2011.  Plaintiff provided a new doctor's note on March 2, 2011 that stated he could not squat, climb stairs and needs to sit as necessary due to pain and swelling.

In his first three years of employment, Plaintiff claims he only received one warning due to a paper towel dispenser being short on paper products.  In February and March of 2011, Plaintiff received three warnings.  The first was issued on February 16, 2011 for not completing his work assignments the day before.  Plaintiff claims that he requested Mr. Schornak to do a walk through with him so that he could see what he missed, but that Mr. Schornak refused.  A second warning was issued on March 2, 2011, the day he submitted his doctor's note, for not properly scrubbing a pop spill on the gym floor.  Plaintiff claims that when he did a walk through with Mr. Schornak, Mr. Schornak could not find the dirty spot on the floor.  The third written notice came on March 30, 2011 because of complaints about the cleanliness of the restrooms.  Plaintiff was terminated that day after finishing his shift.  Additionally, on March 1 and 2, Service 1st secretly placed a motion-activated video camera into Roeper, without telling school officials about it, to film the area when Plaintiff worked.  When asked about the camera, neither Mr. Schornak nor Mr. Weatherly could recall why it was placed in the school.

On March 30, 2011, Ray Boyl, the facilities supervisor at Roeper, sent the following email to Mr. Weatherly:

> Mark:
>
> This is an ongoing complaint that never seems to get rectified even though we have spent over 10,000 dollars in refurbishing of bathroom walls and floors and yearly preventative program. The custodians who have cleaned those bathrooms don't or won't clean those according to the RFP that me and Dave & You have agreed upon. Somebody has to be accountable for this. As you being the owner Service 1st I need you to either make sure the custodians are doing the job properly or replace the person that is presently doing the bathrooms in that building.

Please respond to Dave, Anna and myself to what you are going to do about curing this problem."

Upon receiving the email, Mr. Weatherly immediately decided to terminate Plaintiff. Despite the option of making sure the custodians are doing the job properly, Mr. Weatherly claimed he honestly believed that firing Plaintiff was the only option. He claims that he thought this because Plaintiff already knew everything about the school and the job, so he did not think any training would help. Mr. Weatherly testified that this email is the only reason Service 1st fired Plaintiff. When notified about Plaintiff's termination, Mr. Boyl indicated that he appreciated this action being taken and that was what he expected.

Plaintiff was replaced by Aaron O'Rourke, who did not have disability. Plaintiff claims that the email presented a convenient excuse for terminating him, but the real reasons he was fired was because he file a worker's compensation claim and refused to clean the stairwells because of his disability. In support of this argument, Plaintiff provided several complaints that Roeper made about the cleaning services from Service 1st dating back to when the contract started on June 16, 2006. Despite these complaints, Service 1st neither fired nor disciplined any of the other janitors. Also, Plaintiff claims that Service 1st failed to chemically sanitize the restrooms quarterly as promised after the Kai Vac machine broke. Finally, on March 1 and 2, Service 1st secretly placed a motion-activated video camera into Roeper, without telling school officials about it, to film the area where Plaintiff worked. When asked about the camera, neither Mr. Schornak nor Mr. Weatherly could recall why it was placed in the school. Plaintiff claims the reason was to try to catch him engage in misconduct that would justify his termination.

On May 25, 2012, Plaintiff filed suit against Service 1st and UAP, alleging disability discrimination under the ADA, PDCRA, and retaliation under the WDCA. The Defendants filed

-5-

separate Motions for Summary Judgment on June 17, 2013. Plaintiff responded to each of these

Motions on July 8, 2013. Defendants both filed Replies on July 22, 2013. Plaintiff requested leave

to file Sur-Replies to Defendants' Replies, but that request is moot as Defendants' Motions are

denied.

## III.    LAW & ANALYSIS
### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment

forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530,

532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an

integral part of the fair and efficient administration of justice. The procedure is not a disfavored

procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky

Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v.

Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light

most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B.    UAP's Motion for Summary Judgment

UAP argues summary judgment is appropriate because it neither employed Plaintiff nor held an ownership interest in UAP 19, thus it cannot be held liable as Plaintiff's "employer" under the ADA, PDCRA, and WDCA. Despite the fact that UAP was not Plaintiff's direct employer, Plaintiff maintains that UAP is still liable under at least one of the following three theories: a principal-agent relationship, as a joint employer or as a single employer. In *Swallows v Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997), the Sixth Circuit discussed approvingly the application of these theories to establish that a party is an "employer" under the ADA even if not the direct employer. Thus, the Court must determine whether UAP is an employer under one of these three tests. The three tests are summarized below:

> In one approach, courts examine whether two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise.' In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. A third approach examines whether the person or entity that took the allegedly illegal employment

action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer.

*Id.* (citations omitted).

Plaintiff argues that UAP should be considered an "employer" under all three tests. First, Plaintiff claims that UAP and UAP 19 are a "single employer" on the basis that they have the same address, same phone number, same website, same termination notices, and same management. Further, Plaintiff claims that the separate entities are a sham, which demonstrates common ownership. As to the "joint employer" test, Plaintiff asserts that he filled out UAP's employment application, agreed to abide by their rules, and UAP contractually had the right to fire or discipline Plaintiff. Finally, Plaintiff claims the third test is satisfied because UAP was a principal and Mr. Weatherly acted as their agent when Plaintiff was terminated.

In its Reply, UAP claims that this issue was already ruled on when Plaintiff's Motion to Amend was denied. Though related, the Court has not ruled on this issue. Plaintiff has not attempted to add new defendants to the action, only provide a more detailed analysis of why UAP is an "employer" under the ADA. Contrary to UAP's position, there is nothing new about the claim against UAP. Plaintiff stated that UAP is an "employer" as defined in the ADA in his Complaint and raised the same three counts against UAP that are at issue in this Motion. The final argument raised by UAP is that Plaintiff failed to cite to case law where integrated enterprise or single employer liability was imposed on a named party for the actions of a non-party. Ironically, UAP fails to cite any case law for the proposition that only actions of a named party may be imposed through either integrated enterprise or single employer liability. The Court sees no such requirement in the case law and will not create one now.

There is ample evidence that UAP may still be considered an employer under any one of the

three tests, but the strongest case is under the single employer theory. Four factors are examined to determine whether two entities are a single employer: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Swallows*, 128 F.3d at 994. None of the factors are dispositive and need not all be met to determine two entities are a single employer. *Id.* UAP and UAP 19 have the same management, same address, same website, used many of the same employment forms, and, of course, have almost the same name. Common management means that UAP had control over employees such as Plaintiff, which is a central concern. *Id.* The evidence presented by Plaintiff at least raises a genuine issue of material fact as to whether UAP was Plaintiff's employer under single employer liability. As such, this Court may not conclude as a matter of law that UAP is not Plaintiff's "employer" under the ADA, the PDCRA or the WDCA. Accordingly, UAP's Motion is DENIED.

### C.   Service 1st's Motion for Summary Judgment

#### 1.   ADA

The ADA provides that no covered entity shall discriminate against a qualified individual on the basis of disability. *See* 42 U.S.C. § 12112(a). In *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011), the Sixth Circuit determined that the appropriate test[1] for the prima facie case requires a plaintiff to demonstrate:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had

---

[1]In its Motion, Service 1st uses a different formulation of the prima facie test that was used in *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). In *Whitfield*, the Sixth Circuit explicitly ruled that the five factor test is the appropriate one and rejected a test similar to that used in *Sullivan*. *Whitfield*, 639 F.3d at 259. As such, the prima facie test in *Whitfield* is used.

reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Whitfield*, 639 F.3d at 259 (quotations omitted). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). If successful, the burden shifts back to the plaintiff to prove the offered reason was pretextual. *Id*. At the summary judgment stage, a plaintiff need not establish that the defendant's reason was pretextual, only prove, "enough to create a genuine issue as to whether the rationale is pretextual." *Whitfield*, 639 F.3d at 260.

Plaintiff has established a prima facie case. Service 1st conceded that Plaintiff was disabled and was otherwise qualified for his position. *See* Service 1st Mot. for Summ. J. 14. The third factor is met since Plaintiff was terminated from his position. Service 1st stated it was aware of Plaintiff's disability. *Id*. at 4. The last factor is satisfied since Service 1st hired Aaron O'Rourke to replace Plaintiff, who was not disabled. Thus, Plaintiff has established a prima facie case and the burden shifts to Defendant to provide a non-discriminatory reason for firing Plaintiff.

The non-discriminatory reason offered by Service 1st is that Plaintiff's termination was based on performance. The main support for this argument is the email from Mr. Boyl on March 30, 2011, which Service 1st claims was a "simple and clear request" to terminate Plaintiff. Service 1st also points to Plaintiff's disciplinary record, with several violations coming in the months leading up to Plaintiff's termination. Finally, Defendant claims there was not sufficient temporal proximity between Plaintiff refusing to clean the stairwells and his termination. Evidence of the email and disciplinary record meets Service 1st's burden of production at this stage, so the burden shifts back to Plaintiff to rebut these reasons.

To establish pretext a plaintiff must show, "either (1) that the proffered reasons had no basis

-10-

*in fact,* (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) *overruled on other grounds by, Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 (2009). "To survive summary judgment a plaintiff need only produce enough evidence . . . to rebut, but not disprove, the defendant's proffered rationale." *Jones v. St. Jude Med. S.C., Inc.*, 504 F. App'x 473, 477 (6th Cir. 2012) (quotations and citations omitted).

Plaintiff presents several arguments to rebut Service 1st's non-discriminatory reasons. First, Plaintiff points to the timing, frequency, and credibility of the warning notices he received. He only received one warning in the first three years of working for Service 1st, yet he received three in February and March of 2011 after insisting that he could not clean the stairs. Plaintiff claims this pattern demonstrates an intent to fire him before Mr. Weatherly ever received the complaint about the bathrooms. Plaintiff also points to the placement of the secret surveillance camera as evidence that Service 1st wanted to find a reason to fire him. Service 1st explains in its Reply that the camera was used to catch people stealing supplies, but neither Mr. Schornak nor Mr. Weatherly recalled this reason during their depositions. *See* Pl.'s Resp. Ex I at 89; Ex. G at 31-32. Third, Plaintiff points to Service 1st's satisfaction with his performance as demonstrated by his supervisor visiting the School 20 times in January, February, and March of 2011 without mentioning problems with the restroom. Finally, Plaintiff claims that similarly situated employees were not disciplined after receiving similar complaints about the cleanliness of the restrooms.

Plaintiff has provided enough evidence to rebut Service 1st's non-discriminatory reasons. For starters, the timing and frequency of Plaintiff receiving warnings is suspicious. Plaintiff appeared to be a model employee before requesting his accommodation, which his promotion to crew leader supports. Given his proven track record, it is hard to understand why his job

-11-

performance would degrade so quicky over a month and a half.  Additionally, Plaintiff has raised legitimate doubt about whether or not these write ups were deserved given that one did not actually say what the misconduct was and the other was changed after the fact.  Then there is the secret camera.  It is telling that neither Mr. Schornak nor Mr. Weatherly could recall the reason for placing a hidden camera in the Roeper School, especially given the fact that it is not something they frequently do.  Service 1st's explanation is that the camera was installed to catch its own employees using Roeper's cleaning supplies, yet Mr. Boyl was not notified of installation of the camera.

Finally, Plaintiff provided evidence of other similarly situated employees that were subject to similar complaints yet they were not even disciplined.  Plaintiff provided a lengthy history of complaints from Roeper about Service 1st's performance, but Plaintiff was the only janitor that was fired.  Service 1st explains that this is because Mr. Weatherly had never received an email like the one he got from Mr. Boyl.  Even so, the action taken by Service 1st was drastic considering that Plaintiff had never before received a warning about the restrooms and Mr. Schornak did not notice a problem with the restrooms.  Service 1st claims that it reasonably believed that the email was a directive to fire Plaintiff, but it is unclear why when the email provided the option of "mak[ing] sure the custodians are doing the job properly."  Mr. Boyl may have been pleased with Plaintiff's termination, but he did not request it in that email.  The sum of Plaintiff's evidence is sufficient to rebut the non-discriminatory reasons offered by Service 1st.

### 2.  PDCRA

The PDCRA provides that an employer shall not discharge an employee because of a disability unrelated to the employee's ability to perform the duties of a particular job or position. *See* MICH. COMP. LAWS § 37.1202(1)(b).  To establish a prima facie case of discrimination under the PDCRA, a plaintiff must demonstrate that 1) he has a disability, 2) that the disability is unrelated

-12-

to his ability to perform the duties of a particular job, and 3) that he was discriminated against in one of the ways described in the statute.  *Rollert v. Department of Civil Service*, 228 Mich. App. 534, 538 (1998).  Michigan courts view federal civil rights law as persuasive authority in interpreting Michigan civil rights law.  *Harrison v. Olde Financial*, 225 Mich. App. 601, 606 (1997).  The Michigan Court of Appeals and the Michigan Supreme Court have noted that the ADA and the PDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PDCRA.  *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (Mich. Ct. App. 1999).  Since the PDCRA substantially mirrors the ADA, the resolution of a plaintiff's ADA claim will generally (though not always) resolve the plaintiff's PDCRA claim. *Cotter v. Ajilon Serv., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002), *overruled on different grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 313 (6th Cir. 2012).  The above ADA analysis is applicable to this issue as well, thus summary judgment is not appropriate for this claim either.

### 3.  Retaliation

Under the WDCA, a plaintiff establishes a prima facie case by showing that: "1. he asserted his right to workers' compensation benefits; 2. the defendant knew that plaintiff asserted his right to workers' compensation benefits; 3. the plaintiff suffered an adverse employment action; and 4. there was a causal connection between the plaintiff's assertion of his right to workers' compensation benefits and the adverse employment action."  *Dortman v. ACO Hardware, Inc.*, 405 F. Supp. 2d 812, 822 (E.D. Mich. 2005).  If a prima facie case is established, then the *McDonnell-Douglas* burden shifting analysis applies.  *Id*.

The first three elements are clearly established.  The fourth element is more difficult to discern.  Plaintiff injured himself on October 21, 2010 and was terminated on March 30, 2011, so five months passed before his termination.  The Sixth Circuit held that discharge four months after

-13-

filing a claim is insufficient to support a claim.  *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986).  So, Plaintiff must provide additional evidence from which a causal connection may be inferred.

Other evidence offered by Plaintiff is that he was pressured to return to work early by UAP and the reasons Plaintiff offered for why Service 1st's non-discriminatory reason was pretextual for his ADA claim.  Plaintiff provides case law that pressuring an employee to return early supports an inference of a causal connection, but the timing of the layoff in that case was much closer to the protected activity.  As previously discussed, the Court finds Plaintiff's rebuttal of Service 1st's non-discriminatory reasons compelling, but it is unclear if those actions were in response to his worker's compensation claim.  Many of the actions that Plaintiff complained of occurred closer to the time that Plaintiff refused to clean the stairs, including his eventual termination.  The timing suggests that the "bogus" write ups, secret recording, etc. had more to do with his ADA protected activity rather than his WDCA activity.  However, at this stage of the litigation, the Court is not in a position to discern which protected activity gave rise to Service 1st's actions.  What is clear is that a genuine issue of material fact exists as to whether Plaintiff was terminated for discriminatory reasons.  Since a reasonable jury could find that these inferences were raised in regards to either protected activity, summary judgment is not appropriate.

**IV.     CONCLUSION**

For the reasons articulated above, UAP's Motion for Summary Judgment [#51] and Service 1st's Motion for Summary Judgment [#52] are DENIED.

SO ORDERED.

Dated: July 30, 2013                          /s/Gershwin A Drain
                                              GERSHWIN A. DRAIN
                                              UNITED STATES DISTRICT JUDGE